IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MALVERN PANALYTICAL LTD,

        Plaintiff,

        v.                                          Civil Action No. 19-cv-2157-RGA

TA INSTRUMENTS-WATERS LLC and
WATERS TECHNOLOGIES
CORPORATION,

        Defendants.

<u>MEMORANDUM ORDER</u>

Before the Court is Waters' Partial Motion to Dismiss Malvern's Second Amended

Complaint. (D.I. 95). The motion has been fully briefed. (D.I. 96, 104, 122). For the reasons set

forth below, Waters' Motion is GRANTED.

**I.      BACKGROUND**

Defendants TA Instruments-Waters LLC and Waters Technology Corporation

(collectively "Waters") filed the instant motion to dismiss Malvern's pre-suit willful

infringement and willful blindness allegations under Federal Rule of Civil Procedure 12(b)(6).

(D.I. 96 at 1-2). I previously addressed Malvern's willful infringement claims in the context of

the First Amended Complaint (D.I. 14) and granted Waters' previous motion to dismiss these

allegations with leave to amend. (*See* D.I. 25 at 1-2). Malvern subsequently filed its Second

Amended Complaint (the "SAC" or the "Complaint"). (D.I. 91).

After briefing on Waters' motion was complete, the parties entered into a stipulation of

noninfringement as to U.S. Patent Nos. 8,449,175 and 8,827,549 (the "Plotnikov Patents"). (D.I.

174). As such, I will only address the portions of the briefing that concern U.S. Patent Nos.

1

9,404,876 (the '876 Patent), 10,036,715 (the '715 Patent), and 10,254,239 (the '239 Patent), referred to collectively as the "Broga Patents."

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).  I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.*  Deciding whether a claim is plausible will be a "context-

2

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When considering a motion under Rule 12(b)(6), I usually may not consider material outside the pleadings. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). However, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (internal quotations and emphasis omitted).

## B. Willful Infringement & Willful Blindness

A determination of willfulness requires some finding of conduct that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant" or otherwise "characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932 (2016); *see SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) ("wanton, malicious, and bad-faith"), *cert. den.*, 140 S.Ct. 1108 (2020). A finding of "subjective willfulness," proof that the defendant acted in the face of a risk of infringement that was "either known or so obvious that it should have been known to the accused infringer," can satisfy this standard. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 136 S.Ct. at 1930) (internal quotations omitted), *rev'd on other grounds*, 138 S.Ct. 2129 (2018).

To state a claim for willful infringement, a pleading must allege, at a minimum: "facts from which it can be plausibly inferred that the party accused of infringement (1) had knowledge of or was willfully blind to the existence of the asserted patent and (2) had knowledge of or was willfully blind to the fact that the party's alleged conduct constituted, induced, or contributed to infringement of the asserted patent." *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, 2020 WL 4365809, at *5 (D. Del. July 30, 2020).

## III.   DISCUSSION

### A. Pre-Suit Knowledge of the Asserted Patents

Malvern's pre-suit knowledge allegations turn on a November 30, 2015 letter to Waters which referenced a divisional application. (D.I. 91 ¶ 77). The divisional application resulted in the '876 Patent, which was issued on August 2, 2016. (*Id.* ¶¶ 29, 78). In the letter, Malvern stated that the application "may be pertinent to TA's Affinity ITC Auto," one of the Accused Products. (*Id.* ¶ 77).

The Complaint also alleges that Waters engages in competitive intelligence activities that made it aware of the Broga Patents. (*See id.* ¶¶ 83-93). Per the Complaint, Malvern's competitive intelligence included "regularly visiting competitor websites, attending scientific conferences to scout competitor offerings, attending competitor webinars, collecting and reviewing competitor documentation . . . collecting and reviewing third party industry reports and publications, and Google searching competitors." (*Id.* ¶ 86). Further, Malvern's website contains a page listing the company's patents, which Waters' employees visited "at least once." (*Id.* ¶¶ 94-99).

Waters contends that the SAC's allegations of pre-suit knowledge are insufficient because knowledge of a patent application does not imply knowledge of the later-issued patent. (D.I. 96 at 7-8). In support, Waters relies on *Helios Streaming* and *NexStep*, two cases from this District that concluded that alleging awareness of a patent application alone does not support a finding of pre-suit knowledge. (D.I. 96 at 7 (citing *Helios Streaming, LLC v. Vudu, Inc.*, 2021 WL 254069, at *5 (D. Del. Jan. 26, 2021) and *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 2019 WL 5626647, at *2-3 (D. Del. Oct. 31, 2019)).

However, Malvern's complaint does not rely solely on knowledge of the patent and asserts several examples of competitive surveillance. These allegations are based on numerous documents attached to the SAC. (*See id.* ¶¶ 83-93). Waters contends that the contents of these documents actually contradict Malvern's claims of pre-suit knowledge with respect to the Broga Patents. (D.I. 96 at 8). As an example, Malvern's Complaint repeatedly cites the deposition testimony of Dr. Jamie Rose, a 30(b)(6) witness. (*See, e.g., id.* ¶¶ 68-69, 71-76, 79-80, 82, 84, 96-97). In an uncited portion of his testimony, Dr. Rose stated that Malvern only became aware of the '876 Patent upon the filing of the Complaint and did not follow up after they became aware of the patent application in November 2015. (D.I. 91-6 at 85:1-15).[1] Waters does not challenge, however, the validity of allegations supported by different documentation that Waters would monitor Malvern's website "once a month" and engaged in other efforts to gather information about Malvern. (D.I. 91 ¶¶ 87, 88, 90-91).

Taken together, I find that the SAC sets forth sufficient facts to support an inference of pre-suit knowledge of the Broga Patents. The allegations of competitive intelligence are far more specific than those routinely rejected in this District and others. *Cf. VLSI Tech. LLC v. Intel Corp.*, 2020 WL 3488584, at *5 (D. Del. June 26, 2020) (finding no pre-suit knowledge of infringement where pleading alleged only that defendant "monitored its competitors' activities generally"); *Lippert Components Manufacturing, Inc. v. MOR/ryde, Inc.*, 2018 WL 345767, at *2 (N.D. Ill. Jan. 10, 2018) (rejecting the argument that pre-suit knowledge may be satisfied by "alleging that [Plaintiff] maintained a list of its patents on a website and the parties are competitors who monitor each other's intellectual property"). Malvern's highly specific

---

[1] Malvern dismisses Waters' argument on this point as relying on "self-serving testimony." (D.I. 104 at 13).

allegations of competitive monitoring, coupled with the fact that the parties appear to operate in a two-player market, are sufficient to survive a motion to dismiss for lack of pre-suit knowledge. *See 10x Genomics, Inc. v. Celsee, Inc.*, 2019 WL 5595666, at *8 (D. Del. Oct. 30, 2019) (finding pre-suit knowledge where the pleading alleged monitoring of Plaintiff's portfolio, supported by more specific allegations of attempts to obtain information).

### B. Pre-Suit Knowledge of Infringement

Waters also asserts that the SAC fails to allege any facts that support pre-suit knowledge of infringement of any of the Broga Patents. (D.I. 96 at 10). On this point, I agree. The SAC does not contain any specific allegations concerning Waters' knowledge of infringement of the '876 Patent, the '715 Patent, or the '239 Patent. Instead, the SAC broadly states that, "On information and belief, Defendants acquired pre-suit knowledge of the Asserted Patents and infringement of the Asserted Patents through Defendants' competitive intelligence, research and development, sales, and marketing activities." (D.I. 91 ¶ 103). Such a general statement is insufficient, as pre-suit knowledge alone is not enough.

Malvern correctly points out that knowledge of infringement is based on an assessment "of the totality of the patentee's allegations." *Välinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *13 (D. Del. May 29, 2018), *report and recommendation adopted*, 2018 WL 11013901 (D. Del. Nov. 6, 2018). However, Malvern's Complaint does not contain any specific factual matter pertaining to Waters' knowledge of infringement of the '876 Patent,[2] the '715 Patent, or the '239 Patent. Even considering the totality of the circumstances, I am not convinced that Malvern's allegations of competitor monitoring, particularly where they do not

---

[2] With respect to the '876 Patent, the SAC is slightly more specific. It states that Defendants have been on notice of the '876 Patent and their direct infringement of it since they were made aware of its patent application via the 2015 letter. (D.I. 91 ¶ 101).

reference the patents-in-suit, can support inferences of both pre-suit knowledge of the patents-in-suit and pre-suit knowledge of infringement. I am aware of such cases, included those cited by Malvern, where pleading pre-suit competitor monitoring supported an inference of the defendant's knowledge of infringement. But these cases often involved more detailed allegations and, often, pre-suit knowledge was undisputed. *See, e.g., Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, 2021 WL 3526178, at \*3 (D. Del. Aug. 11, 2021) (finding knowledge of infringement where pre-suit knowledge was conceded, and the pleading contained allegations "suggesting [defendants] were sufficient familiar with the patents"); *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, 2019 WL 8641303, at \*4-5 (D. Del. Aug. 7, 2019) (inferring pre-suit knowledge of infringement where pre-suit knowledge was conceded and the pleadings plausibly alleged defendants knew "(1) the substance of their competitor's new patents-in-suit; (2) how their own accused methods and systems worked (as alleged in the SAC); and (3) why it is that those methods and systems were actually infringing the claims of these patents").

### C. Willful Blindness

The SAC also states that, "To the extend Defendants did not have pre-suit direct knowledge of one or more Asserted Patents, Defendants were willfully blind to the asserted Patents and infringement of the Asserted Patents." (D.I. 91 ¶ 105). In addition, the Complaint alleges that Waters was aware that Malvern held patents on its own technology, and, "Defendants subjectively believed that there was a high probability that Malvern held patents related to ITC instruments, and that Defendants took deliberate actions to remain ignorant as to the existence of both the Asserted Patents and Defendants' own infringement of these patents." (*Id.* ¶ 107).

7

Malvern's argument essentially asks the Court to conclude that if Waters' competitive monitoring scheme does not permit one to infer knowledge of infringement, one must infer that Waters was being willfully blind.  However, in relying on previously pleaded material, the SAC suffers from the same deficiencies discussed above, namely, that it does not contain any allegations tied to the subject matter of the '876 Patent, the '715 Patent, or the '239 Patents. More to the point, the SAC simply recites the willful blindness standard and does not allege any direct actions taken by Waters.[3]  Such conclusory pleading is insufficient. *See VSLI Tech. LLC v. Intel Corp.*, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (rejecting willful blindness argument where plaintiff alleged the existence of a corporate policy of not reading patents, but failed to allege willful blindness as to its defendant's own infringement); *cf. TC Tech. LLC v. Sprint Corp.*, 2019 WL 529678, at *3-4 (D. Del. Feb. 11, 2019) (declining to dismiss willful blindness theory where the complaint alleged that defendants had "an in-house counsel policy of not reviewing patent sale offerings" and had received a detailed pre-suit offering of the asserted patent).

## D. Dismissal with Prejudice

Waters requests that the Court dismiss Malvern's willfulness claims with prejudice because this is its third attempt to plead willful infringement. (D.I. 96 at 1).  Malvern did not respond on this point.

---

[3] Malvern argues that pleading a "direct action" is not required. (D.I. 104 at 19).  Even assuming this is the case, Malvern must do more than plead the standard for willful blindness.  Malvern has cited no case in which pleading the existence of a competitor relationship and activity monitoring is sufficient to support a theory of willful blindness.

8

## IV.    CONCLUSION

For the reasons stated above, Waters' Partial Motion to Dismiss Malvern's Second

Amended Complaint (D.I. 95) is **GRANTED**.  Malvern's pre-suit willful infringement claims

are **DISMISSED** with prejudice.

IT IS SO ORDERED this day of August 2021.

/s/ Richard G. Andrews
United States District Judge